UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-674-RJC

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD ) <br> OF NORTH CAROLINA, ) <br> ) <br> **Plaintiff,** ) <br> **Counterclaim Defendant, and** ) <br> **Counterclaim Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> ) <br> JEMSEK CLINIC, P.A. and ) <br> JOSEPH G. JEMSEK, M.D., ) <br> an individual, ) <br> ) <br> **Defendants,** ) <br> **Counterclaim Plaintiffs,** ) <br> **Counterclaim Defendants** ) <br> ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | **ORDER** |

**THIS MATTER** comes before the Court on Plaintiff Blue Cross and Blue Shield of North Carolina's (BCBSNC) Motion to Withdraw Reference from the Bankruptcy Court, (Doc. 1), the Jemsek Defendants' (Jemsek) Response, (Doc. No. 4), and Plaintiff's Reply. (Doc. 5).

It is ripe for review by this Court.

## I.  BACKGROUND

This peripatetic case has a convoluted history summarized here in barest form. In 2006, Plaintiff BCBSNC filed a series of state law complaints against the Jemsek Defendants related to insurance claims submitted to Plaintiff by Defendants. Shortly thereafter, Jemsek removed the cases to Bankruptcy Court where they were consolidated into Case No. 07-3006. In 2007, BCBSNC asserted its state claims as proofs of claim against the estates of the Jemsek Defendants, who, in turn, filed nine counterclaims against BCBSNC.

The litigation has taken twists and turns since then. In 2008, a nationwide class action lawsuit involving parallel claims was settled in the Southern District of Florida. Unaware of the settlement, Jemsek failed to opt out, resulting in the dismissal of seven of Defendants' nine counterclaims. On appeal, the dismissal was affirmed by the Eleventh Circuit Court of Appeals. In 2010, Jemsek moved for—and the Bankruptcy Court granted—sanctions against BCBSNC for failing to inform Defendants of the existence or settlement of the parallel case. As sanctions, the Bankruptcy Court dismissed all of BCBSNC's claims and ordered the payment of attorney's fees and costs in the amount of $1,291,415.60. Thereafter, BCBSNC's interlocutory appeal was denied.

As it stands now, the sole claims remaining in this litigation belong to the Jemsek Defendants, who bear that caption in form only. They are claims under North Carolina law for defamation and tortious interference with a business relationship, and BCBSNC seeks to withdraw them from Bankruptcy Court.

## II. DISCUSSION

The Jemsek Defendants have requested a jury trial on their counterclaims; likewise, BCBSNC has declined to consent to the Bankruptcy Court entering a final order in this matter. Given these postures, the parties concede that, following the Supreme Court's decision in Stern v. Marshall, the Bankruptcy Court lacks the constitutional authority to enter a final order with respect to the two remaining claims in this case. 131 S. Ct. 2594 (2011). At issue here is whether the Bankruptcy Court should handle pre-trial matters to include the issuance of findings and recommendations, or whether the case should be withdrawn to this Court.

A.     28 U.S.C. § 157

Federal district courts have original jurisdiction over all bankruptcy matters and related proceedings. 28 U.S.C. § 1334(a), (b). Section 157(a) allows district courts to refer bankruptcy cases to the bankruptcy court, which by standing order, this district has done.

28 U.S.C. § 157(d) empowers a district court to withdraw a proceeding from the bankruptcy court on its own motion or on timely motion of any party and to have the proceeding heard in the district court if there is "cause shown" for the removal. While this practice, known as "discretionary" or "permissive" withdrawal, has been seldom utilized in this district, Plaintiff contends that the sweeping implications of the Stern decision warrant withdrawal of Defendants' remaining counterclaims.[1]

B.     Discretionary Withdrawal

As the party seeking withdrawal, BCBSNC bears the burden of demonstrating cause for the Court to exercise its discretion and grant withdrawal. In re QSM, LLC, 453 B.R. 807, 810, 2011 WL 2161792, at *1 (E.D.Va. 2011). Here, BCBSNC contends that, having disallowed its claims and lacking the constitutional authority to enter final judgment on Defendants counterclaims, the Bankruptcy Court is no longer the proper locus for this case as there is no scenario in which it can resolve the matter.

Although "cause" is not defined by statute, courts in this circuit have consistently

---

[1] 28 U.S.C. § 157(d) also provides for mandatory withdrawal where the resolution of the proceeding requires consideration of both the Bankruptcy Code and non-bankruptcy federal statutes regulating organizations or activities affecting interstate commerce. Courts narrowly construe this provision to apply only in cases where substantial and material consideration of non-bankruptcy federal statutes is necessary for the resolution of the proceeding. See In re Manhattan Invest. Fund Ltd., 343 B.R. 63 (S.D.N.Y. 2006). As the two claims remaining are state law counterclaims, mandatory withdrawal is not an issue in this case and the Court confines its analysis to discretionary withdrawal.

recognized several factors that govern whether discretionary withdrawal should be granted: (1) whether the proceeding is core or non-core; (2) the uniform administration of bankruptcy proceedings; (3) expediting the bankruptcy process and promoting judicial economy; (4) the efficient use of debtors' and creditors' resources; (5) the reduction of forum shopping; and, (6) the preservation of the right to a jury trial. Id. at 809-10 (citing In re U.S. Airways Group, Inc., 296 B.R. 673, 677 (E.D.Va. 2003)). Discretionary withdrawal of reference "should be determined on a case-by-case basis by weighing all of the factors presented in a particular case, including the core/non-core distinction." Id. The Court examines each of these factors in turn.

1. Core v. Non-Core

The Stern decision altered the way courts distinguish between core and non-core claims. Prior to Stern, the determination of whether a matter was core or non-core was a comparatively simple one and was governed by 28 U.S.C. § 157(b)(1), which accords to bankruptcy judges the authority to "hear and determine" all core proceedings that "arise under title 11" or in a case brought under title 11. For guidance, section 157(b)(2) establishes a non-exhaustive list of sixteen core proceedings, including the type of claims brought in this suit, namely: "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C).

This analysis has become considerably more complex in the aftermath of Stern. Plaintiff, citing to cases in this district, contends that Stern added a layer of additional analysis requiring courts to consider two additional factors: (1) whether the action stems from the bankruptcy itself; and, (2) whether the issue would be "necessarily resolved" in the claims allowance process. See In re Somerset Properties SPE, LLC, 2012 WL 3877791, at *4 (Bankr. E.D.N.C. Sept. 6, 2012);

4

In re The McAlpine Group, LLC, 2012 WL 6138195, at *4-5 (Bankr. W.D.N.C. Dec. 11, 2012).

Other courts have agreed that Stern adds another layer of analysis, but have offered different formulations of such analysis. See Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP, 462 B.R. 457, 472 (S.D.N.Y) (holding that the key factor determining whether a matter could be defined as core turned on "whether, under Stern, the [b]ankruptcy [c]ourt has the power to adjudicate it.")

Regardless of the precise formulation employed by a court, this much is clear: the question of whether a proceeding is core or non-core turns, in large measure, on whether a bankruptcy court possesses the constitutional authority to enter final judgment in the matter. Here, both parties concede that the Jemsek counterclaims are "statutorily core" under 157(b)(2)(C), and the Bankruptcy Court lacks the Constitutional authority to enter a final judgment in the matter. They differ in their views of how such claims are treated in the wake of Stern.

The primary argument of the Jemsek Defendants is that, regardless of whether the matter is deemed core or non-core, the Bankruptcy Court can still enter proposed findings of fact and conclusions of law as nothing in Stern strips it of such authority. Opposing this argument, Plaintiff contends that Stern gave birth to a third classification of proceeding to account for exactly the types of claims found here, namely, ones that are "statutorily core," but which are also deemed non-core by virtue of the fact that the bankruptcy court lacks constitutional authority to enter judgment on them.[2] Defying the principle of non-contradiction, these claims

---

[2] This "third category" was not specifically identified by Plaintiff, but follows naturally from its arguments. In its original motion, Plaintiff argued that, following the disallowance of Plaintiff's claims, the Jemsek counterclaims "fail both prongs of the Stern test and therefore are not core claims." (Doc. 1 at 16). However, finding a claim non-core for the purposes of a motion for withdrawal does not alter whether the claims are "statutorily core. "More

are, at once, core for the purposes of section 157(b)(2), and non-core for the purposes of withdrawal under section 157(d).

This Court will leave it to higher courts to define the specific parameters of claims that fall into the interstices revealed by Stern. Whether statutorily core claims such as the ones brought by Defendants are deemed core, non-core or some third category need not be settled here. What is significant is this: the bankruptcy judge cannot enter a final judgment on these claims and they cannot be resolved in the claims allowance process. On the limited question of whether to withdraw the claims, and before considering the other factors, the "core/non-core" factor favors withdrawal. Plaintiff has made a persuasive case that such claims cannot be deemed to be core for the purposes of withdrawal following Stern. "[A]fter Stern, one can still [consider the applicable factors] but not looking at whether the matter can be classified as "core" under 28 U.S.C. § 157, but rather at whether, under Stern, the [b]ankruptcy [c]ourt has the final power to adjudicate it." ACC Retail Property Development and Acquisition Fund, LLC v. Bank of America, 12-361, 2012 WL 8667572 at * 2 (E.D.N.C. Sep. 28, 2012) (citing Dev. Specialists, 462 B.R. at 467).

    2.    Other Factors

While the core/non-core factor favors withdrawal, the other factors strongly favor retention by the Bankruptcy Court. There exists a standing order in this district, which automatically refers all bankruptcy matters to the bankruptcy court. See, Local Rule Referencing

---

importantly, it is important to continue to construe [the counterclaims] as statutorily core for the purposes of the Motion to Withdraw." (Doc. 5 at 3). Such claim, by logical necessity, would be deemed "statutorily core" for the purposes of § 157(b) but non-core for the purposes of § 157(d) as related to discretionary withdrawal. Other courts have deemed this third category to constitute the "gap" in the analytical framework created by Stern. Executive Benefits Ins. Agency v. Arkinson (In re Bellingham Ins. Agency, Inc.), 702 F.3d 553, 565 (9th Cir. 2012)

All Bankruptcy Matters to the Bankruptcy Judge, July 30, 1984.³ Additionally, the district court issued a standing order referring to the bankruptcy court all pre-trial proceedings in bankruptcy cases in which the parties have made a demand for jury trial. See, 3:04-MC-156, In re Adversary Proceedings in Bankruptcy Court, (April 28, 2011).⁴ These orders reflect a consensus within this district that all bankruptcy related claims, including non-core ones, should remain in front of the bankruptcy judge unless cause is shown for withdrawal of reference or they are ready for trial in a district court. The uniformity of administration is a strong consideration and dictates that bankruptcy judges address matters that have legal and factual issues in common with the bankruptcy action and that reference only be withdrawn when such matters are ready for final adjudication in a district court.

Likewise, judicial economy and efficiency favor retention in this case. The claims at issue have been pending for several years in the bankruptcy court. The bankruptcy judge is familiar with the parties, the factual makeup of the case, and the legal and factual issues relevant to the remaining claims. The disallowance of Plaintiff's claims against the bankruptcy estate does not alter the fact that judicial economy dictates that matters such as discovery would be addressed most efficiently in the court in which this action was brought.

Finally, issues related to forum shopping, parties' resources, and the right to trial by jury on the remaining claims present no great matters. The existence of a jury demand in an adversary proceeding does "not mean that the bankruptcy court immediately loses jurisdiction of the entire matter or that the district court cannot delegate to the bankruptcy court the

---

³ Available at: http://www.ncwb.uscourts.gov/chambers/adminorders/main.html  Order #63.
⁴ Available at: http://www.ncwd.uscourts.gov/court-info/local-rules-and-orders/general-orders?page=1

responsibility for supervising discovery, conducting pre-trial conferences, and other matters short of the jury selection and trial." In re Stansbury Poplar Place, Inc., 13 F.3d 122, 128 (4th Cir. 1993) (internal quotations omitted). For these reasons, the Court declines to exercise its discretion to withdraw reference.

Based on these considerations, the Court **DENIES** Plaintiff's Motion to Withdraw Reference to the District Court. (Doc. 1).

    C.    <u>Authority of Bankruptcy Court to Issue Findings and Recommendations</u>

Having declined to withdraw reference, the final issue is whether the bankruptcy court possesses the authority to issue findings and recommendations subject to de novo review by this Court. 28 U.S.C. § 157(b)(2) provides statutory authority for bankruptcy courts to "hear and determine" all "core" proceedings arising under title 11, or arising in a case under title 11. In cases that are not core proceedings, a bankruptcy court may hear and "submit proposed findings of fact and conclusions of law to the district court," which reviews them de novo. 28 U.S.C. § 157(c)(1). Whether bankruptcy courts could issue findings of fact and conclusion of law was not an issue prior to Stern. The implications of that decision, however, have led to the curious state in which bankruptcy judges possess the authority under section 157(c) to issue findings and recommendations on non-core matters subject to de novo review by the district court, but possess no such express authority to do so in core matters under section 157(b).

The Fourth Circuit has not addressed it and the other circuit courts are split on this issue. Examining the express language of the statute, the Seventh Circuit held in <u>Ortiz v. Aurora Healthcare, Inc., (in re Ortiz)</u>, that for a bankruptcy judge to issue findings of fact or conclusions of law, "[the court] would have to hold that the debtor's complaints were 'not a core proceeding'

8

but are 'otherwise related to a case under title 11.'" 665 F.3d 906, 915 (7th Cir. 2011). In so holding, the Seventh Circuit implied that the lack of explicit textual authority in the language of section 157(b) authorizing the issuance of findings and recommendations determined that bankruptcy courts lacked such authority.

Other courts, including the Ninth Circuit as well as those in this district have found no prohibition to the issuance of findings and recommendations in core matters. In <u>Executive Benefits Ins. Agency v. Arkinson (In re Bellingham Ins. Agency, Inc.)</u>, the Ninth Circuit cited to the Congressional objective of empowering bankruptcy courts in finding that bankruptcy judges possessed such authority. 702 F.3d 553, 565 (9th Cir. 2012). Discussing whether a bankruptcy judge could issue findings and recommendations on a core fraudulent conveyance claim, the Court found that:

> We have noted that Congress enumerated the examples of core proceedings in § 157(b)(2) with "a view toward expanding the bankruptcy court's jurisdiction to its constitutional limit." <u>Makin</u>, 823 F.2d at 1301; <u>see also</u> <u>Celotex Corp. v. Edwards</u>, 514 U.S. 300, 308, 115 S. Ct. 1493, 131 L.Ed.2d 403 (1995). With respect to any bankruptcy-related claim, then, the bankruptcy courts must be vested with as much adjudicatory power as the Constitution will bear. In light of this statutory example, the power to "hear and determine" a proceeding surely encompasses the power to hear the proceeding and submit proposed findings of fact and conclusions of law to the district court. Section 157(b)(1) empowers bankruptcy courts to "hear and determine" fraudulent conveyance claims in a manner consistent with the strictures of Article III—and that includes the more modest power to submit findings of fact and conclusions of law to the district courts.

<u>Id.</u> (citing <u>Duck v. Munn (In re Mankin)</u>, 823 F.2d 1296, 1300-01 (9th Cir. 1987)).

Most importantly, the <u>Stern</u> opinion itself offered no indication that it viewed bankruptcy courts as wholly without authority to issue findings and recommendations on core matters. In <u>Stern</u>, the district court, finding that a right to jury trial existed as to the state law counterclaim,

9

treated the bankruptcy court's determination as findings and recommendations which it reviewed de novo. The Stern majority offered no indication that such procedure was improper by either court. In contrast, the language of the opinion suggests an intent to retain as much continuity within the current framework as is constitutionally permissible. "We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree . . . that the question presented here is a 'narrow' one." Stern, 131 S. Ct. at 2620 (internal citation omitted).

This is an apt instance of the Holmesian "the greater includes the lesser" principle that specific authorization of a greater power implies the existence of lesser powers consistent with the greater. See Western Union Tel. Co. v. Kansas (ex rel Coleman), 216 U.S. 1, 53 (1910) (Holmes, J. dissenting).[5] The Court agrees with other courts in this district in holding that the authority to issue findings and recommendations obtains regardless of whether the matter is deemed core or non-core under Stern analysis. See In re El-Atari, 2011 WL 5828013 at *3 (E.D.Va. Nov. 18, 2011); In re TMQ Liquidation Co., 2012 WL 1986526 at *2 (D.S.C. June 4, 2012).

Accordingly, having denied Plaintiff's motion to withdraw, the Court finds that the bankruptcy court retains reference of this case until the matter is ready for trial. The Bankruptcy Judge shall conduct discovery and issue findings and recommendations on dispositive motions subject to de novo review by this court.

---

[5] Discussing the power of a state to regulate, Justice Holmes noted that: "Even in the law the whole generally includes its parts. If the State may prohibit, it may prohibit with the privilege of avoiding the prohibition in a certain way."

**III. CONCLUSION**

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion to Withdraw Reference to Bankruptcy Court, (Doc. 1), is **DENIED**;

2. The Bankruptcy Court will oversee all discovery matters and, if necessary, issue findings of fact and conclusions of law on any dispositive motions. The reference with be withdrawn once the case is ready for trial.

_____
Robert J. Conrad, Jr.
United States District Judge